UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT A. AUSTIN & RAAPOETRY LLC, | |
| Plaintiffs, | No. 18 C 7268 |
| v. | Judge Thomas M. Durkin |
| CITY OF CHICAGO, DETECTIVE LAWRENCE BOND, DETECTIVE JERAD TIM, SGT. J.A. MACIEJEWSKI, JR., URIEL N. PADILLA, MICHAEL S. MUELLER, & SHARON HUFFMAN, | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Robert Austin and his company RAAPOETRY LLC bring this action against the City of Chicago and Chicago Police Department officers Lawrence Bond, Jerad Tim, J.A. Maciejewski Jr., Uriel Padilla, Michael Mueller, and Sharon Huffman for several civil rights violations stemming from Austin's arrest in February of 2018. The City of Chicago moved to dismiss the claims against it, and the defendants collectively moved to dismiss RAAPOETRY from the case. For the following reasons, the defendants' motions are granted, and except for Austin's 42 U.S.C. § 1983 false imprisonment, conspiracy, and due process violation claims, the Court *sua sponte* dismisses Austin's remaining claims. Defendant Lieutenant Huffman is also dismissed from the case.

1

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Plaintiffs Robert Austin and RAAPOETRY, LLC sued defendants City of Chicago, Detective Lawrence Bond, Detective Jerad Tim, Sergeant J.A. Maciejewski, Jr., Officer Uriel N. Padilla, Officer Michael S. Mueller, and Lieutenant Sharon Huffman for several civil rights violations stemming from Austin's arrest in February of 2018. In his 58-page complaint, Austin alleges that on February 8, 2018, defendants Mueller, Padilla, and Maciejewski arrived at Austin's home to question him about false accusations stemming from Austin's interest in a WNBA player. R. 1 at 9-10. Austin then alleges the defendants arrested him without probable cause and transported him to the police station without advising him of the charges against him or reading him his *Miranda* rights. *Id.* at 11-14, 19, 26-27. Once in custody, defendants Bond and Tim interviewed Austin about his alleged crimes. *Id.* at 35-36. Austin then alleges that some or all of the defendants altered the case incident and arrest reports to make him appear guilty of those crimes, despite their knowledge of exculpatory evidence. *See id.* at 18-19, 35-36.

Austin further alleges that the City of Chicago fosters an environment that allows police officers to act with impunity. *Id.* at 54. Specifically, that the police department's lack of an effective early warning system to mitigate unlawful conduct by its officers and the department's "code of silence" led to his constitutional violations. *Id.*

The City of Chicago moved to dismiss Austin's *Monell* claim. The defendants also collectively moved to dismiss RAAPOETRY from the case.

## Analysis

I. *Monell* Claim

A governmental entity cannot be held liable under Section 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't. of Soc. Servs. of the City of New York*. 436 U.S. 658, 694 (1978). Instead, a plaintiff must establish liability through the existence of (1) an express policy; (2) an unofficial governmental practice or custom that is widespread and well-settled, or (3) an act by an official with final policymaking authority. *See Thomas v. Cook County Sherriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010). The policy or custom must be "the moving force" behind the constitutional violation. *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). The gravamen of a *Monell* claim "is not individual misconduct by police officers (that is covered elsewhere in § 1983), but a *widespread practice* that permeates a critical mass of the institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). For this reason, "misbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole." *Id.*

Austin appears to allege both "express policy" and "widespread practice" theories of *Monell* liability. Each is addressed in turn.

a) Express Policy

The express policy theory of *Monell* liability applies "where a policy explicitly violates a constitutional right when enforced."[1] *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Austin alleges that the officers acted pursuant to the police department's "code of silence," codified as Article V, Rule 31 of the Rules and Regulations of the Chicago Police Department. R. 51 at 3. That rule prohibits:

> Publicly criticizing the official actions of another Department member, when the result of such criticism can reasonably be foreseen to undermine the effectiveness of the official working relationship of the member within his assigned unit. All such criticism should be made and reported to the Department.[2]

Austin fails to identify any specific language in Article V, Rule 31 that is unconstitutional when applied. As such, his *Monell* claim cannot survive on an express policy theory. *See Duff v. Grandberry*, 2017 WL 2424236, at *3 (N.D. Ill. June 5, 2017) (quoting *Calhoun* and explaining that the plaintiff must point to specific language in the defendant's policy that is constitutionally suspect to prevail on an express policy theory); *Lopez v. Vidljinovic*, 2016 WL 4429637, at *3 (N.D. Ill. Aug.

---

[1] A plaintiff may also allege an express policy theory by objecting to omissions in a policy. *Calhoun*, 408 F.3d at 380. Austin does not allege facts consistent with this theory and thus the Court does not address it here.

[2] While Austin does not cite the language of Article V, Rule 31 in his complaint, the Court may take judicial notice of documents contained in the public record, including reports, decisions, and regulations of administrative bodies, without converting a motion to dismiss into a motion for summary judgment. *U.S. ex rel. Bidani v. Lewis*, 2001 WL 1609377, at *4 (N.D. Ill. Dec. 14, 2001); *see also Driebel v. City of Milwaukee*, 298 F.3d 622, 630 n.2 (7th Cir. 2002) (taking judicial notice of sections of the Milwaukee Police Department Manual of Rules and Regulations on an appeal from a granting of summary judgment). The Rules and Regulations of the Chicago Police Department are available at: http://directives.chicagopolice.org/directives/data/a7a57bf0-12d7c186-a4912-d7c1-8b12822c2ca106c4.html (last visited September 27, 2019).

22, 2016) ("[Plaintiff] never identifies specific language in any of these policies which is 'explicitly' violative of a person's constitutional rights when applied.").

Rather, Austin contends that the Chicago Police Department's code of silence fostered an environment in which officers could act with impunity, which in turn led the officers to violate his civil rights. R. 51 at 4-5. In so arguing, it appears that Austin is alleging an implicit policy exists, which is properly analyzed under a widespread practice – not an express policy – theory of *Monell* liability. *See Alcorn v. City of Chicago*, 2018 WL 3614010, at *16 (N.D. Ill. July 27, 2018) (explaining that "an 'implicit policy' claim is not another variation of an 'express policy' claim but rather is another name for a claim brought under a 'widespread practice' theory"); *Calhoun*, 408 F.3d at 381 (describing plaintiff's claim as alleging an "implicit policy reflected in an alleged widespread practice"). The Court will thus analyze Austin's claim as such here.

b) Widespread Practice

To prevail on a widespread practice theory, Austin must show that the city engaged in a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Moreover, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Lanigan v. Village of East Hazel Crest, III*, 110 F.3d 467, 479 (7th Cir. 1997) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Austin argues that the police department's code of silence and lack of an effective early warning system to mitigate unlawful police conduct led to the officers' violation of his civil rights. Both allegations are insufficient to state a *Monell* claim. There are two main problems with Austin's allegations against the City of Chicago. First, Austin does not allege any facts to explain how these policies caused or related to his own experience. Rather, Austin merely recites the elements of a *Monell* claim in conclusory fashion. That is not enough to survive a motion to dismiss. *See, e.g., McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (affirming dismissal of *Monell* claim and noting that many of the alleged "facts" were merely legal conclusions or elements of the cause of action); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792 (N.D. Ill. 2013) (dismissing *Monell* claim because the plaintiff only included boilerplate allegations in his complaint); *Smith v. Preston*, 2012 WL 698889, at *2 (N.D. Ill. Feb. 29, 2012) (dismissing *Monell* claim because plaintiff only provided general allegations as to certain policies and practices that existed). Second, while it is not impossible for a plaintiff to demonstrate the existence of an unofficial policy or custom based on his own experience, it is "necessarily more difficult . . . because 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (quoting *Calhoun*, 408 F.3d at 380)). There is nothing in the complaint that allows the Court to infer there was a widespread practice of false arrests or fabrication of evidence at the Chicago Police Department. The closest Austin comes to alleging his experience was not a random event is listing complaints filed against two of the defendant officers in

7

his response to the motion to dismiss. But Austin provides no information about how (if at all) those complaints relate to the officers' conduct towards him.

In short, Austin's allegations against the City of Chicago consist only of boilerplate legal conclusions. Thus, to the extent Austin asserts a *Monell* claim against the City of Chicago, it is dismissed without prejudice.

II. Dismissal of Plaintiff RAAPOETRY LLC

The defendants next collectively move to dismiss plaintiff RAAPOETRY LLC from the case, arguing that the company does not have standing to assert Section 1983 claims on Austin's behalf. Austin contends that RAAPOETRY has standing because as the company's owner and sole member, any civil rights violations or false statements against him also negatively impact RAAPOETRY. Austin's argument fails.

As an initial matter, the complaint appears to contain no allegations concerning RAAPOETRY and thus it is unclear whether RAAPOETRY has standing in this case. Nevertheless, the Court need not address this issue because a "corporation is not permitted to litigate in a federal court unless it is represented by a lawyer licensed to practice in that court." *United States v. Hagerman*, 545 F.3d 579, 581. This rule applies equally to limited liability partnerships. *Id.* at 582. Because RAAPOETRY is not represented by a licensed attorney, it is dismissed from this case without prejudice.

III.     Remaining Claims

Pro se complaints should be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But even a pro se plaintiff must comply with the requirements of FRCP 8(a) by providing a statement of the claim that gives the defendant fair notice of what the claim is and the grounds upon which it rests. *Mitchell v. Plano Police Dept.*, 2017 WL 4340118, at *3 (N.D. Ill. Sept. 29, 2017); *see also U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").

Austin's complaint is long, unintelligible at points, and appears to be missing pages. He alleges a nearly identical laundry list of claims against each of the defendants and, for the most part, the complaint's allegations are too vague, conclusory, or confusing to qualify as well-pleaded facts. For example, Austin alleges defamation against all of the defendants without specifying which defendants said which statements that were allegedly defamatory. *See Mitchell*, 2017 WL 4340118, at *6 (dismissing defamation claim because the pro se plaintiff failed to identify any particular statement, or facts suggesting that the statement was false, and rather just listed the legal elements of defamation). Austin also alleges criminal violations such as tampering with public records that he does not have standing to bring.

Even under the liberal construction given to pleadings in the context of a motion to dismiss, especially for pro se plaintiffs, the Court cannot discern facts in the complaint to sustain most of Austin's claims. The gravamen of Austin's complaint

9

is that he was arrested without probable cause and that defendants Bond, Tim, Maciejewski Jr., Padilla, and Mueller conspired to make him appear guilty of a crime he did not commit. Drawing all reasonable inferences in Austin's favor, the complaint contains enough facts to state false imprisonment, due process, and conspiracy claims under 42 U.S.C. § 1983.[3] The Court, *sua sponte*, dismisses the remaining claims without prejudice.[4] In addition, the complaint's sole allegation against Lieutenant Huffman is that she approved a case incident report. That is not enough to sustain a claim against her. Lieutenant Huffman is dismissed without prejudice.

**Conclusion**

For the reasons stated above, the Court grants the City of Chicago's motion to dismiss, and the defendants' combined motion to dismiss RAAPOETRY from the case [R. 23]. The Court also *sua sponte* dismisses Austin's remaining claims except for his false imprisonment, due process, and conspiracy claims under 42 U.S.C. § 1983.

RAAPOETRY LLC is dismissed without prejudice, only to be reinstated if it obtains a licensed attorney to represent it in this case. Lieutenant Huffman is also dismissed without prejudice. Austin may proceed with his claims for false imprisonment, conspiracy, and due process violations against the remaining

---

[3] Austin alleges both false imprisonment and false arrest. Because false arrest is a type of false imprisonment, and the claims here overlap, the Court refers to the two torts together as false imprisonment. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).
[4] Ausin filed a motion to amend his complaint on April 19, 2019. R. 52. That motion does not contain any additional factual allegations, but rather lists additional statutes under which Austin seeks to pursue claims against the defendants. The Court denies Austin's motion for the same reasons it dismisses the additional claims in his complaint.

individual defendants. His other claims are dismissed without prejudice. Should Austin wish to pursue any claims other than for false imprisonment, conspiracy, or a violation of his due process rights against the remaining defendants, and if he believes he can cure the deficiencies identified here, he may move for leave to file an amended complaint on or before October 30, 2019. The motion should attach the proposed amended complaint and be supported by a brief of no more than ten pages describing how the proposed amended complaint cures the deficiencies in his first complaint.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: September 30, 2019